Oak Hall - 125
Mount Olive Correctional Facility
One Mountainside Way
Mount Olive, West Virginia 25185

November 6, 2015

Ms. Patricia S. Connor, Clerk
U. S. Court of Appeals, 4th Circuit
U. S. Courthouse Annex, 5th Floor
1100 East Main Street
Richmond, Virginia 23219

Re: *Cyrus v. Ballard*, No. Case No. 15-7648
(1:12-09341-DAF-RCV)

Dear Ms. Connor:

On September 16, 2015, the Honorable David A. Faber, entered a judgment order in this civil action. He denied and dismissed the petitioner's section 2254 petition. And, he adopted the Magistrate Judge's Report and Recommendation. The U. S.. District Court granted Respondent's Motion for Summary Judgment and Incorporated Motion to Dismiss. The Court denied Petitioner's Application for post-conviction relief by a prisoner in state custody pursuant to 28 U.S.C. § 2254. On The U.S. District Court did not issue a certificate of appealability .

Today, I am submitting my informal brief. It is my understanding that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides that in order to take an appeal from a final order denying habeas corpus, a COA must be obtained from a panel of circuit judges. 28 U.S.C. § 2253, subd. (c)(1). I believe I can make a substantial showing of a denial of a constitutional right, 28 U.S.C.A. § 2253(c)(2), required for the issuance of a COA. Please present this application to the appropriate panel of the appellate court at the appropriate time. A copy of this document has been mailed to Shannon Frederick Kiser, Office of the Attorney General, 812 Quarrier Street, 6th Floor, Charleston, West Virginia, 25301. Thank you for you timely consideration of this matter. I cordially anticipate hearing from you in the near future.

Sincerely yours,

Harold L. Cyrus

HAROLD L. CYRUS

Enclosure

cc:    S. F. Kiser, Esq.

No. 15-7648 (PSC-ABW)

IN THE COURT OF APPEALS FOR THE FOURTH CIRCUIT
Richmond, Virginia

HAROLD LEE CYRUS

      Appellant *Pro Se*, Petitioner below,

v.                                      Case No. 15-7648
                                      (1:12-09341-DAF-RCV)

David Ballard, Warden,
Mt. Olive Correctional Complex,

      Appellee, Respondent below.

INFORMAL BRIEF

## 1. Jurisdiction

A. Name of Court from which you are appealing: U.S. District Court for the Southern

District Of W. Va. (Bluefield), *Cyrus v. Ballard*, Civil Action No. (1:12-09341-DAF-RCV) .

B. Date of order you are appealing: September 16, 2015

### TIMELINESS OF NOTICE OF APPEAL

      The Honorable David A. Faber entered a final order dismissing this case with prejudice

on September 16, 2015, *Cyrus v. Ballard*, Civil Action No. Civil Action No. (1:12-09341-DAF-

RCV). Petitioner's Application for a Certificate of Appealability and Notice of Appeal was

placed in the Institution's informal mailing system at Mt. Olive Correctional Complex for

mailing to the U.S. District Court and Court of Appeals on October 12, 2015.

### CERTIFICATE OF APPEALABILITY

      On September 16, 2015, the Honorable David A. Faber, adopted the Findings and

Recommendations of U.S. Magistrate Judge R. Clarke VanDervort and granted

-1-

No. 15-7648 (PSC-ABW)

Respondent's Motion for Summary Judgment and the incorporated Motion to Dismiss. Rule 11 of the Rules Governing § 2254 Cases requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," *Miller-El v. Cockrell*, 537 U.S. 322, 335-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).[1] As the Court said in **Slack**:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (...) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "*Slack*, 529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4). Further, in order to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Judge Faber determined that a certificate of appealabilty "will not be granted unless there is 'a substantial showing of the denial of a constitutional right,'" 28 U.S.C. § 2253(c). The Court concluded that the petitioner had not satisfied the governing standard and denied a certificate of appealability." *Cyrus v. Ballard*, U.S. District Court, No. 1:12-09341-DAF-RCV, "Judgment Order," September 16, 2015. The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that, in order to take an appeal from a final order

---

[1] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983); see also *Williams v. Taylor*, 529 U.S. 362, 402-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (setting out the standards applicable to a § 2254 petition on the merits)

No. 15-7648 (PSC-ABW)

denying habeas corpus, a Certificate of Appealability (hereinafter "COA") must be obtained from a circuit judge. 28 U.S.C. § 2253, subd. (c)(1).

In order to obtain a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). However, a petitioner need not show that he should prevail on the merits, *Slack v. McDaniel*, 529 U.S. at 484 (U..S., 2000). Rather, a petitioner is merely required to make the "modest" showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack*, 529 U.S. 473, 484 (2000). The substantial showing standard required for a COA is "relatively low," *Jennings v. Woodford*, 290 F. 3d 1006, 1011 (9th Cir., 2003). Hence, a COA must issue if any of the following apply: (1) the issues are debatable among reasonable jurists; (2) another court could resolve the issues differently; or (3) the questions raised are adequate enough to encourage the petitioner to proceed further. Finally, "(t)he Court must resolve doubts about the propriety of a COA in the petitioner's favor," J*ennings*, *supra*. For the reasons set forth below, petitioner respectfully prays this court will grant petitioner a Certificate of Appealability on the following issues.

## ISSUES ON APPEAL

**ISSUE ONE: INEFFECTIVE ASSISTANCE OF COUNSEL,**

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 15 - 30

Memorandum Opinion n Order, Dkt. 46, 09/16/15, pp. 7- 15)

Petitioner was denied his right to effective assistance of counsel by trial counsel 's acts of omission and acts of commission before trial, during the trial, during the sentencing phase, and on direct appeal.

No. 15-7648 (PSC-ABW)

David C. Smith, Esquire, of Bluefield, WV, represented petitioner during the preliminary hearing, the arraignment, the initial plea, trial, and sentencing phases of petitioner's criminal trial. He was assisted by Phillip A. Scantlebury. Petitioner has identified seven (7) discrete acts of omission or commission by this trial counsel which harmed this defendant. (*Cyrus v. Ballard*, U.S. Dist. Ct., 01:12-09341, "Memorandum and Order," 09-16-15, pp. 3-4, 7 - 15); (*Cyrus v. Ballard*, U.S. Dist. Ct., 01:12-09341, "Proposed Findings and Recommendation," 08-04-15, pp.9, 15-30). On the ineffective assistance of counsel claims (hereinafter "I.A.C.") the U.S. District Court deferred to the decision of the state habeas court which utilized a more stringent standard than the federal standard.

To prevail in a state post-conviction proceeding, "the petitioner has the burden of proving *by a preponderance of the evidence* the allegations contained in the petition which would warrant his release," Syl. Pt. 22*, State v. Thomas*, 157 W. Va. 640, 203 S. E. 2d 445 (1974).[2] To prevail on an ineffective assistance claim in this Court, petitioner must show that "the performance of his counsel fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," ***Strickland v. Washington***, 466 U.S. 668, 693, 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). ***Strickland***'s reasonable probability standard *is not a preponderance of evidence* standard. The ***Strickland*** standard does not require a showing that counsel's actions "more likely than not altered the outcome," *Strickland*, 466 U.S. at 693.

---

[2] Syl. Pt. 1, *SER Scott v. Boles*, 150 W. Va. 453, 147 S.E. 2d 486 (1966)

No. 15-7648 (PSC-ABW)

Mr. David C. Smith and Mr. Phillip A. Scantlebury did not request the court to instruct the jury on Sexual Abuse in the 3rd Degree as a lesser included offense of Sexual Abuse by a Custodian. In 1987, the Supreme Court of Appeals of West Virginia held that the failure of defense counsel to offer a sexual abuse instruction was such plain error in a prosecution for the Sexual Assault in the 1st Degree that the trial court ought to have intervened to avoid clear prejudice to the defendant, *State v. Dellinger*, 178 W. Va. 265, 358 S. E. 2d 826 (1987).In *Dellinger*, the Court held one could not commit sexual intrusion, as alleged in the indictment, without sexual contact since sexual intrusion necessarily involves contact. It is legally impossible to commit the Sexual Abuse by a Custodian as charged in the indictment returned by the Grand Jury of Mercer County on May 9, 2005, without committing sexual abuse in the 3rd degree.

There are no elements in the sexual abuse statute [3] not required for Sexual Abuse by a Custodian[4] under W. Va. Code § 61-8D-5(a). In 1987, the Supreme Court of Appeal held that the failure of defense counsel to offer a sexual abuse instruction was such plain error in a prosecution for the Sexual Assault in the 1st Degree that the trial court ought to have intervened to avoid clear prejudice to the defendant. In this case, Judge Frazier did not intervene and he did not instruct the jury that Sexual Abuse in 3rd Degree is a lesser

---

[3] 1. The Defendant, 2. On an unknown date in 2002, 3. In Mercer County, W. Va, 4. Subjected K.S., 5. Who was less than 16 years of age of age, 6. To Sexual Contact. WV Code § 61-8B-9(a) (1984, c. 56) Misdemeanor

[4] 1. The Defendant, 2. On an unknown date in 2002, 3. In Mercer County, W. Va., 4. Did engage in, or attempt to engage in, 5. Sexual intercourse with K. S., 6. A child under his care, custody and control. W. Va. Code §(1998, c. 117) [Count 19,(2002)] Sanction: 10 - 20 years

-5-

No. 15-7648 (PSC-ABW)

included offense of Sexual Abuse by Custodian, see, *State v. Dellinger*, 178 W. Va. 265,

358 S. E. 2d 826 (1987), and petitioner was harmed by this failure. The sanction for

violating W. Va. Code § 61-8B-9 is less than one year. The sanction for violating W. Va.

Code § 61-8D-5(a) is ten to twenty years.

<u>Consecutive Sentences for Incest and Sexual Abuse by a Custodian</u>

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 25 - 28

Memorandum Opinion n Order, Dkt. 46, 09/16/15, pp. 13 - 15

The U.S. District Court deferred to a state court's finding that there was no violation

of the constitutional prohibition of double jeopardy because prior to petitioner's trial, the

state legislature as made it clear that a violation of W. Va. Code § 61-8D-5(a), Sexual

Abuse by a Custodian, is a separate offense from other offenses in the state's penal code.

The indictment alleged a violation of three (3) statutes for identical conduct, an act of

sexual intercourse between a step-daughter and her step-father, which were not separate

in time or space. The jury heard the evidence and returned to four guilty verdicts (incest

and parental child abuse) and two not-guilty verdicts (Sexual Assault in the 3rd Degree).

The jury simultaneously found petitioner guilty and innocent of the same conduct.

The Fifth Amendment provides, "No person shall . . . be subject for the same

offence to be twice put in jeopardy of life or limb[.]" A substantial double-jeopardy violation

arise  when identical criminal act is punished under three (3) distinct statutory provisions

Under Supreme Court precedent articulated in ***Blockburger v. United States***, 284 U.S.

299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306, 309 (1932), there are two  tests. The first test

asks whether each criminal act is a separate and distinct one, separated by time. 284 U.S.

-6-

No. 15-7648 (PSC-ABW)

at 301-02. If the offense is a single continuous act, with a single impulse, in which several different statutory provisions are necessarily violated along that continuum, the offenses merge together. This is variously called "the merger doctrine," or "the single impulse doctrine," 284 U.S. 302-93; *Hagood v. U.S.*, 93 A. 3d 210, 226 (D.C. 2014) If more than one statutory offense is necessarily committed by that single criminal act and original impulse, then the offenses merge and the defendant may be punished only once. The "single impulse" test is U. S. Supreme Court precedent. There was no evidence presented at trial that an act of sexual contact in 2002 was not a single continuous act. There was no evidence presented at trial that an act of sexual contact in 2003 was not a single continuous act.  The jury was simply not instructed that there were three separate acts of illicit sexual intercourse in either  2003 or 2002. Defense and appellate counsel did not challenge the multiple sentences as a violation of the ***Blockburger***'s single impulse test in the state Courts and therefore petitioner was denied  meaningful and effective assistance of counsel every state forum. Therefore, a COA must issue because this issue is debatable among reasonable jurists, another court could resolve the issues differently, and the question raised is adequate enough to encourage the petitioner to proceed further.

<u>Conviction and Sentence for Incest</u>

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 23 - 25

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 12 - 13

In this case, there is total and complete overlap of the alleged elements for incest and the alleged elements for Sexual abuse by a custodian:

On October 13, 2005. the Grand Jury returned an indictment that alleged 1) the

-7-

No. 15-7648 (PSC-ABW)

defendant, 2) during 2000, 3) in Mercer County, W. Va., 4) engaged in sexual intercourse, 5) with K.R.S., 6) who was his step-daughter. Count 20, <u>State v. Cyrus</u>, Mercer County, No. 05-F-307-F. On October 13, 2005, the Grand Jury returned an indictment that alleged 1) the defendant, 2) during 2000, 3) in Mercer County, 4) did engage in 5) sexual intercourse with 6) K.R.S., a child under his care, custody and control. Count 19, <u>State v. Cyrus</u>, Mercer County, No. 05-F-307-F. As such, under West Virginia Law, the incest charge was a necessarily included lesser offense of Sexual Abuse by a Custodian.

Under state law a defendant is entitled to a lesser included offense instruction when there is a lesser included offense in the crime charge charged in the indictment, and the evidence introduced at trial must be such that it creates an evidentiary dispute on the elements of the greater offense which are different from the elements of the lesser included offense. In this case, it is impossible to commit sexual abuse by a custodian, as alleged in the indictment, without first committing incest, as alleged in the indictment, and therefore, incest in a necessarily included lesser offense of sexual abuse by a custodian.

There was an evidentiary dispute given the victim's testimony that petitioner never ejaculated in her (<u>State v. Cyrus</u>, Mercer County, No. 05-F-307-F, 04/11/06, Trial Transcript, p. 230) and "when the incest law was enacted, society's interest in prohibiting incest was the prevention of pregnancies which may involve a high risk of abnormal or defective offspring and does not necessarily extend to the type of sexual contact that does not lead to pregnancy." Proposed Findings", Dkt. 36, 08/4/15, p. 24 \- 25 Twenty-one (21)

No. 15-7648 (PSC-ABW)

jurisdictions do not punish any form of affinal incest.[5] Seven (7) states punish affinal incest only if the victim is a child or if the sexual contact was non-consensual.[6] It is common in many states to have criminal incest provisions that are less restrictive than their counterpart civil marriage restrictions, i.e. W. Va. Code § 61-12 and W. Va. Code § 48-2-302 (11 relationships).[7] Only twenty states explicitly prohibited sexual intercourse between a stepparent and step-child.[8] Therefore, counsel was ineffective for failing to request a instruction on incest as a necessarily included lesser offense of sexual abuse by a custodian. Therefore, a COA must issue because this issue is debatable among reasonable jurists, another court could resolve the issues differently, and the question raised is adequate enough to encourage the petitioner to proceed further.

<u>Counsel's failure to interview or subpoena Dr. Wallace as a Defense Witness</u>

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 16 - 19

---

[5] Alaska, Arizona, California, Florida, Hawaii, Idaho, Indiana, Kansas, Louisiana, Maine, Minnesota, Nevada, N. M., N. Y., N. D. (*U.S. v. Fiddler*, 688 F. 2d 45, 47-48 (8th Cir., 1982), Pennsylvania, Vermont, Va. Code Ann. § 18.2-366. 20-38.1, and Wisconsin. Rhode Island repealed its criminal incest statute in 1989. The Model Penal Code does not criminalize affinal incest. See ULA Model Penal Code § 230.2.

[6] *Iowa Code* § 709.4 (prohibiting as "sexual abuse," a sexual relationship with a person who is related "blood or affinity to the 4th Degree who is 14 or 15 years of age); Mich. Comp. Law §§ 750.520b-750.520c (punishing as sexual contact a relationship with a person who is at least 13 but less than 16 years of age); Mont., Nev., N.J. Stat. Ann. § 2C:14-2 (punishing as "aggravated sexual assault a relationship with a person "related to the victim by blood or affinity to the third degree" who is at least 13 but less than 16 years of age; S.D. Codified Laws, Ann.§ 22-22-19l; Washington, *State v. Handyside*, 42 Wash. App. 412, 711 P. 2d 379 (1985)

[7] W. Va. Code § 48-2-302(a) A man is prohibited from marrying his mother, grandmother, sister, daughter, granddaughter, half sister, aunt, brother's daughter, sister's daughter, first or double cousin.

[8] Alabama, Arkansas, Colorado, Connecticut, (Delaware), Georgia, Illinois, (Indiana), (Kansas), Mississippi, (N.H.), N.C., Okla., (Ore.), S.C. S.D., Tn. Tx., Utah, and Washington. Bratt, Carolyn S., "Incest Statutes and the Fundamental Right of Marriage: Is Oedipus Free to Marry?" Family Law Quarterly, Vol. XVIII, No. 3, Fall, 1984, (Appendix C) (Bracketed states have revised laws)

No. 15-7648 (PSC-ABW)

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 7 - 9

Dr. Gregory H. Wallace examined K. R. S. on January 29, 2002. He did not find evidence of sexual intercourse, an essential element of Incest. Mr. Smith, defense counsel made no effort to interview Dr. Wallace before trial or subpoena him as defense witness. In state habeas proceeding, David Smith, trial counsel, asserted that Dr. Wallace was somewhere in Ohio "so getting a subpoena on him was mission impossible." And, secondarily, "he had no use for Dr. Wallace." The Honorable Derek Swope, asserted that Mr. Smith's failure to interview or contact Dr. Wallace before trial was a tactical choice. See, *SER Cyrus v. Ballard*, Mercer County C. A. No. 10-C-84, Omnibus Habeas Corpus, 01-06-11, Transcript, pp. 18 - 20.

A decision cannot be fairly characterized as "strategic" unless it is conscious choice between two legitimate and rational alternatives. It must be borne of deliberation and not happenstance, inattention, or neglect... Although we afford deference to counsel's strategic decisions, for this deference to apply there must be some evidence that the decision was just that: strategic. *Wood v. Allen*, 558 U.S. 290, 207-308, 130 S. Ct. 841, 852-853, 175 L. Ed. 2d 738 (2010)(Justice John Paul Stevens)

Whether a counsel's decision is a product of strategy is a question of fact for purposes of 28 U.S.C. § 2254(d)(2). In this instance, it is a unreasonable application of federal constitutional law, to conclude that Mr. Smith's abject failure to interview a crucial witness before trial or subpoena him as a witness was a strategic choice especially since trial's counsel's testimony at the state habeas proceeding did not indicate it was a conscious choice between two legitimate and rational alternatives.

-10-

No. 15-7648 (PSC-ABW)

<u>Defense Counsel's consult an expert on Child Sexual Abuse Prior to Trial</u>

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 19 - 21

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 9 - 11

The U.S. Magistrate Judge and the U.S. District Judge did not determine whether trial counsel's performance was deficient when he failed to consult a expert on child abuse or subpoena a expert on child sexual abuse to testify at trial when it became apparent the .K. R. S. would contradict her prior testimony that petitioner had not sexually abused her. Child Sexual Abuse is a recognized medical diagnosis. International Classification of Disease (9th Ed.) Expert testimony regarding medical evidence of sexual abuse is generally admissible. In this case, neither Dr. Wallace nor the SANE nurse who did testify employed a colposcope to aid in the detection of subtle signs of abuse.

Prior to petitioner's trial, in 1985, the Council on Scientific Affairs of the American Medical Association published guidelines on the diagnosis and treatment of sexual abuse. In 1988, the Council of the American Academy of Child and Adolescent Psychiatry approved guideline for clinical evaluation of adolescent sexual abuse. Counsel's lack of familiarity with these guidelines reflects his failure to make any meaningful investigation to the counter the State's proposed testimony on sexual abuse. In child sexual abuse litigation, defense counsel may assert the a child should not be believed because she did not report the alleged abuse for a substantial period of time, or, because she retracted her allegations of abuse. Experts on child sexual abuse are drawn from the professions of psychology, medicine, psychiatry and social work. As petitioner's attorneys were not psychologists, doctors, psychiatrists or social workers, the contributions of these experts

No. 15-7648 (PSC-ABW)

are an important investigative to formulating an viable defense to the charges. .

A lay people, i.e. the jurors, might question how a small hymenal opening could accommodate an object as large as an erect adult penis. The average diameter of the adult male penis is 3.5 cm. at the glans penis. The normal size of the vaginal opening at puberty is 0.7 cm. to 1 cm. A disruption of a hymen is a significant finding. Counsel was unprepared to address Shirley Aycoth's testimony that K.R.S.'s hymen was not intact. Studies of sexual abuse, available prior to trial, demonstrates that some physical conditions which were once widely believed to be The lower courts did not address the failure of Phillip A. Scantlebury and David C. Smith to contact a child sexual abuse expert, either to testify or to educate trial counsel on vagaries of abuse indicia.

In West Virginia,  an child sexual abuse expert may describe certain behavioral characteristics such as nightmares, difficulty sleeping, or concentrating, or withdrawal from social relationships and activities. *State v. Edward Charles L.*, 398 S. E. 2d 123 (WV, 1990) Studies of sexual abuse conducted prior to petitioner trial shows that some physical conditions that were once wildly believed to be indicative of sexual abuse are so common in non-abused children that they have only limited relevance as proof of abuse. For example, hymenal diameters among non-abused girls range widely, suggesting that a slightly enlarged vaginal opening is not relevant for proving abuse.  Since counsel did not consult child sexual abuse expert, they were unprepared to address such testimony.

In the absence of strong evidence of the accused's guilt, the counsel had evidence of a probable prior molestation of K. R. S.  by another adult, Christopher T. Smith. There is an  alternative basis for K. R.S.'s hymen not being intact which was not disclosed to the

No. 15-7648 (PSC-ABW)

jury. Chris T. Smith, an 19 year old had a non-consensual sexual relationship with K. R.S. in June, 2003. Mr. Smith was prosecuted in Bland County, Va., for contributing to the delinquency of a minor in contravention of <u>Va. Code</u> § 18.2-371(I).[9] K.R.S. was examined by a SANE nurse at Bluefield Regional Medical Center shortly after Mr. Smith's arrest.[10] Judge Frazier, the trial judge, sealed those hospital records and the Bluefield Regional Medical Center will not release K.R.S.'s patient's records without a court order. Petitioner submits an examination of judicially sealed medical records of K. R.S. maintained at the Bluefield Medical Center would help this Court make a reliable determination with regard two major claims for relief: ineffective assistance of counsel and the insufficiency of evidence. ***Harris v. Nelson***, 394 U.S. 286, 299-300 (1969). At a minimum, Defense Counsel should have inquired of K. R. S. knew Christopher T. Smith, and, and then have a separate witness introduce the public documents detailing Mr. Smith's arrest record and disposition of a charges when K.R.S. underwent her physical examination to show an alternative source of the complainant's knowledge of sexual acts.

<u>Petitioner was denied meaningful and effective assistance of appellate counsel</u>

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 21-23

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 11 - 12

---

[9] Any person 18 years of age or older, ..., who (i) willfully contributes to ... any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abuse or neglected...shall be guilty of a Class I misdemeanor. <u>Va. Code</u> § 18.2-371. See Incident Report, 2003-450, 06- 21-25, 2003; Warrant of Arrest, Case No. 520-01-00, August 4, 2003 (*infra*.)

[10] (See Emergency Room Note prepared by Dr. Zaki Elsarrag, .M.D.; "As per my discussion with the SANE Nurse, this same patient was here about one month ago, where she had presumably engaged in consensual sexual activity with adult men and she was ... treated and released again.....")

-13-

No. 15-7648 (PSC-ABW)

Phillip A. Scantlebury, Esq. and David. C. Smith, Esq., of , Bluefield, West Virginia, served a trial counsel. David C. Smith, Esq., prepared petitioner's direct appeal. It is axiomatic that "an attorney ... is unlikely to raise an ineffective assistance claim against himself," ***Massaro v. U.S.***, 538 U.S. 500, 503, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). And, the 6th Amendment includes a right to representation free from conflicts of interest, ***Wood v. Georgia***, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981). Petitioner was denied an objective evaluation of trial counsels' pre-trial conduct, their conduct during the guilt/innocence phase and their conduct during the sentencing phase before the petition for appeal was filed.

The Respondent's Motion for Summary Judgment did not address the acts of commissions and omission of trial counsel in his capacity as appellate counsel. He simily asserted that "petitioner's claims of ineffective assistance of counsel, as a whole, failed to satisfy the rigid requirements set forth in ***Strickland***. (Dkt. 23, 11/07/14, p. 21) The U.S. Magistrate Judge did not evaluate David C. Smith's conduct as  appellate counsel, he found that petitioner's claim of ineffective assistance of appellate counsel is improperly pled." (Dkt., 36, 08/04/15, p. 23)

As appellate counsel, Mr. Smith did not identify the failure of trial counsel request the court to instruct the jury on Sexual Abuse in the 3rd Degree as a lesser included offense of Sexual Abuse by a Custodian, to mitigate the penalty in the event of conviction (pp. 5, 12, *supra*) As appellate counsel, Mr. Smith did not identify the disparity of punishment imposed on the co-defendants, (p. 12, *infra*). As appellate counsel, Mr. Smith

-14-

No. 15-7648 (PSC-ABW)

did not identify the failure of trial counsel to provide a complete defense by failing to introduce the criminal history of Christopher T. Smith as alternative source of the complainant's knowledge of sexual terminology ( pp. 10, 11). As appellate counsel, Mr. Smith did not raise a double jeopardy claim predicated on the consecutive sentences for incest and parental sexual abuse (pp. 6, 23, 27, 24). As appellate counsel, Mr. Smith did not identify the failure of trial counsel to consult an expert on child sexual abuse or subpoena an expert on child sexual abuse as a defense witness (pp. 8 - 10, *supra*) As appellate counsel, Mr. Smith did not identify the failure of trial counsel to insure the trial court gave the jury an accurate statement of law ( pp. 21, 31, *infra*.)

Appellate counsel did not challenge the multiple sentences as a violation of the ***Blockburger***'s single impulse test in the state Courts and therefore petitioner was denied meaningful and effective assistance of counsel every state forum or critically examine any aspect of trial counsel's lack of preparation and trial conduct. Therefore, a COA must issue because the deficient appellate counsel  issue is debatable among reasonable jurists, another court could resolve the issues differently, and the question raised is adequate enough to encourage the petitioner to proceed further.

**ISSUE NO. 2:  PROSECUTORIAL MISCONDUCT**

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp. 34 - 37

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 18 - 21

On May 9, 2005, the Grand Jury of Mercer County, WV, returned a twenty-three count indictment against petitioner. On October 13, 2005, the Grand Jury of Mercer

No. 15-7648 (PSC-ABW)

County, WV, returned a six-count indictment against Vickie Cyrus, petitioner's wife, alleging multiple violations of W. Va. Code § 61-8D-4(b), *State v. Cyrus*, Case No. 05-F-301-F . On February 21, 2007, the Honorable David W. Knight,  accepted Mrs. Cyrus' plea of guilty and sentenced Mrs. Cyrus to an indeterminate sentence of one (1) to three (3) years for the lesser included offense of Child Neglect resulting in injury, W. Va. Code § 61-8D-4(a) in 1996,  *State v. Cyrus*, Case No. 05-F-301-F, Order. Significantly, Mrs. Cyrus was not indicted for any offenses after 1996. Petitioner was acquitted of all charged offenses before December 31, 2001. There is significant disparity between these co-defendants.

In December, 2003, the Honorable John R. Frazier, presided over an adjudication hearing in a juvenile abuse and neglect action designated *State of West Virginia, In The Interest of Kimberly S*., Case No. 03-JA-75-F. The State was represented by Thomas M. Janutolo, Assistant Prosecuting Attorney, Mercer County. After being first duly sworn, Kimberly S., 13 years old, was called as a witness in this proceeding.  During this hearing, Kimberly S., was questioned by Thomas M. Janutolo and Judge Frazier. When asked, "did Harold Cyrus do anything to you sexually in that truck?", Kimberly replied, "No Sir," pp. 77-78, 81. When Andrew Maier, the lawyer representing Vickie Cyrus, asked her, "What you're saying here, today, is that when you said your stepfather, Harold Cyrus, who you call Lee, sexually abused you in some way that wasn't true?, she replied, "Yes sir." Judge Frazier subsequently terminated the parental rights of Vickie and Harold Cyrus.

On April 16, 2006, the Honorable John R. Frazier, presided over petitioner's criminal trial, *State v. Cyrus*, 05-F-307. After being first duly sworn, Kimberly, S., 16 years old, was

-16-

No. 15-7648 (PSC-ABW)

called as a witness. Trial Transcript, 04-16-06, pp. 204 - 294. Kimberly testified she became petitioner's helper in 2002. Deborah Garten, prosecuting attorney, asked Kimberly if "while you were helping him with these summer jobs, did you continue to have sex with him?" Kimberly replied, "Yes." Trial Transcript, 04-16-06, pp. 235 - 240. When Kimberly failed to report a actual act of sexual intercourse, Ms. Garten posed a leading question without the court's permission, "When you use the expression "used his penis on me" are you talking about sexual intercourse,?", and Kimberly replied, "Yes.".

A criminal defendant has a constitutional right to a fair trial. A new trial should be ordered, on the basis of the state's use of perjured testimony, when a defendant establishes that 1) the state's case included perjured testimony 2) the prosecution knew, or should have known, of the perjury, and 3) there is any likelihood that the false testimony could have affected the judgement of the jury. The U.S. District Court deemed the diametrically contradictory testimony, e.g. he didn't sexually molest me vs. he did sexually molest me, as a "mere inconsistency in the testimony of a state witness," (Order, p. 19)

Three years before petitioner's trial, the prosecuting attorney elicited testimony from Kimberly that the defendant, her stepfather, never sexually molested her. Judge Frazier heard this testimony. At trial, the prosecuting attorney elicited testimony from the only witness that the defendant did sexually molest her. Two possibilities exist: one, Kimberly testified truthfully in abuse and neglect proceeding, and was induced to testify falsely in the criminal trial. Or, two, Kimberly was induced to testify falsely in the abuse and neglect proceeding, and testified truthfully in the criminal trial. Given her subsequent recantations and the report of Sherry Hedge, M.A. and Samantha Mann, M.A., on December 2, 2003,

-17-

No. 15-7648 (PSC-ABW)

which ruled out sexual abuse of a child, there is valid evidence favoring the first possibility.

Prosecutors may not deliberately deceive a jury by knowingly presenting false evidence or by allowing false testimony to go uncorrected. Kimberly's trial testimony directly addresses the central operative fact: was there an act of sexual intercourse in 2002 or 2003. It relates to the basic material fact. Her testimony was the only evidence presented by the State to establish petitioner had violated two penal statutes, WV Code § 61-8-12 and WV Code § 61-8D-5(a). Without her testimony there would be no conviction. There is a strong probability that K.R.S.'s testimony affected the judgement of the jury.

Before trial, Deborah Garten knew, or should have known, that the Prosecuting Attorney had represented the State in the abuse and neglect hearing where K.R.S. denied all sexual contact with petitioner. Judge Frazier presided over the abuse and neglect hearing and the criminal trial. Neither public official objected to the knowing presentation of perjured testimony, and allowed the testimony to go before the jury.

A criminal defendant has a constitutional right to a fair trial. A new trial must be ordered, on the basis of the state's use of perjured testimony, when a defendant establishes that 1) the state's case included perjured testimony 2) the prosecution knew, or should have known, of the perjury, and 3) there is any likelihood that the false testimony could have affected the judgement of the jury. The U.S. District Court deemed the diametrically opposite testimony, e.g. he didn't sexually molest me vs. he did sexually molest me, as a "mere inconsistency in the testimony of a state witness." The prosecuting attorney and presiding judge were aware of Kimberly's testimony during the abuse and neglect hearing. And, without the incriminating testimony in the 2006 trial, petitioner would

-18-

No. 15-7648 (PSC-ABW)

not have been convicted.

Whether the prosecuting attorney deliberately deceived the petit jury by knowingly presenting false evidence or by allowing false testimony to go uncorrected is an issue which is debatable among reasonable jurists. Another court could resolve the issues differently. And, the question raised is adequate enough to encourage the petitioner to proceed further., Petitioner respectfully prays this court will grant petitioner a Certificate of Appealability on the prosecutorial misconduct issue.

**ISSUE 3: INSUFFICIENT EVIDENCE**

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp.37 -41

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 21 - 23

Petitioner was convicted and sentenced for committing a single act of sexual intercourse sometime in 2002 which simultaneously violated two laws, Sexual Abuse by a custodian, W. Va. Code § 61-8D-5 (Count 19) and W. Va. Code § 61-8-12, Incest (Counts 20). Petitioner was convicted and sentenced for committing a single act of sexual intercourse sometime in 2003 which simultaneously violated two laws, Sexual Abuse by a custodian, W. Va. Code § 61-8D-5 (Count 22) and W. Va. Code § 61-8-12, Incest (Count 23). At sentencing, the Court imposed two terms of "not less than ten (10) nor more than twenty (20) years" on the Sexual Abuse by a Custodian convictions, and two terms of "not less than five (5) nor more than fifteen (15) years" on the Incest convictions. The Circuit Court suspended the petitioner's sentence for Sexual Abuse by a Custodian in 2003 and ordered the remaining sentences to be served consecutively, a *de facto* term of

No. 15-7648 (PSC-ABW)

incarceration not less than 20 nor more than 50 years.

The evidence does not support a finding that multiple acts of sexual intercourse occurred on separate days or sequentially on a single day. Therefore, the lesser sentence for incest must merge into the greater sentence, parental sexual abuse, or a sentence must be vacated as a violation of the constitutional prohibition of double jeopardy.

When the legislature enacted W. Va. Code § 61-8D-4 (1988), our lawmakers declared it to be a separate and distinct offense. A "separate offense" is defined as "an offense arising out the same event as another offense but containing some differences in the elements of proof." Black's Law Dictionary, 8th Ed., p. 1112. Given the penalty when this offense was initially five (5) to ten (10) years, this provision was a fair and reasonable response to a recognized social problem. The quadrupling of the penalty over the ensuing decades did not abate the social problem and overcrowded the prisons.

Under state law, a trial judge may impose consecutive sentences, i.e.,

When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement, unless, in the discretion of the trial court, the second or any subsequent conviction is ordered by the court to run concurrently with the first term of imprisonment imposed. (Code 1923, c. 152, § 26)

The Prosecuting Attorney abused her discretion when she indicted petitioner, a fifty year old male with a heart condition,[11] for two offenses when the elements of incest, in this

---

[11] Petitioner had a dual chamber cardiac pacemaker inplantation for sinus note disease. Petitioner has undergone a pacemaker battery change out in 2005 and 2015. In February 2015, petitioner underwent a lead revision. In Sept., 2015, petitioner had some atrial arrhythmias and has had episodes of controlled supraventricular tachycardia. See, Dr. Mohammad Java Rana, M.D., Letter of Sept. 18, 2015.

No. 15-7648 (PSC-ABW)

incest, in this instance, are identical to the elements of sexual abuse. The trial court abused his discretion when he imposed on consecutive sentences on a defendant with a verified heart condition for incest and sexual abuse by a custodian when the elements of incest and the elements of sexual abuse are identical. The identity of the defendant and victim are identical. The date of the offense is identical. The relationship between the defendant and the victim are indication. And the criminal act is identical.

As the jury acquitted petitioner of two counts alleging the commission of Sexual Assault in the 3rd Degree, predicated on the same facts and evidence as the presented to prove incest and parental child abuse (Counts 18 and 21), the jury made two diametrically opposing decision: A) the defendant committed an act of sexual intercourse with his step-daughter, and we find him guilty of incest and parental child abuse, and B) this defendant did not commit an act of sexual intercourse, on the same date, time and conduct, with his stepdaughter,  and we find him non-guilty of sexual assault in the third degree.

Given the victim's denial of any sexual conduct while under oath during the child neglect hearing preceding petitioner's trial, and her subsequent accusation during the criminal trial of sexual conduct, followed by her recantation of her trial testimony, should led a reasonable jurist to question the validity and propriety of consecutive sentences for these convictions.

**ISSUE NO. 4: ACTUAL INNOCENCE, pp. 23 - 26**

Proposed Findings of Fact and Recommendation, Dkt. 36, 08/4/15, pp.41 -45

Memorandum Opinion & Order, Dkt. 46, 09/16/15, pp. 23 - 26

While the jury returned verdicts of guilty on the incest  and sexual abuse charges

No. 15-7648 (PSC-ABW)

in the 2002, the same fact-finding body acquitted petitioner of sexual assault in the 3rd Degree based on the same evidence. While the jury returned verdicts of guilty on the incest and sexual abuse charges in the 2003, the same fact-finding body acquitted petitioner of sexual assault in the 3rd degree based on the same evidence. The jury returned logically irreconcilable verdicts.

A conviction for incest in 2002, required the State to present proof of "sexual intercourse" which was defined as "any act between persons involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth of anus of another person, W. Va. Code § 61-8-12(a)(12)(1994, 1st Ex. Sess., c. 23). The Charge to the jury used this language.

A conviction for sexual abuse by a custodian in 2002, requires the State to present proof of sexual contact which was defined as "

> any intentional touching, either directly or through clothing, fo the anus or any part of the sex organs of another person, or the breasts of the female, or the intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party. WV Code § 61-8N-1((6)(2000, c. 85) W. Va. Code § 61-8D-1(8)(1988, c. 42).

Sexual contact clearly precedes sexual intercourse in all instances of sexual intercourse. On April 12, 2006, the Honorable John R. Frazier did not instruct the jury on the elements of sexual contact or sexual intrusion. Therefore, the jury was not given an accurate statement of the law.

An acquittal for Sexual Assault in the 3rd Degree reflects the failure of the State to prove beyond a reasonable doubt one of nine elements of the offense:

No. 15-7648 (PSC-ABW)

One, the defendant, Two, on an unknown date in 2002, Three, in Mercer County, West Virginia, Four, being sixteen years of age or more, Five, *engaged in sexual intercourse*, Six, with K. R.S., Seven, who was less than sixteen years of age, Eight, and who was at least four years younger than defendant, and Nine, who was not married to the defendant. W. Va. Code § 61-8B-5(a)(2)(2000, c. 85)

On April 12, 2006, the Court's charge to the jury omitted the ninth element, "who was not married to the defendant. The Court gave the jury an inaccurate statement of law.

Extremely contradictory and irreconcilable verdicts warrant corrective action. Where a guilty verdict on one count necessarily negates an element essential to another count on which defendant was found guilty, such verdicts cannot stand. A legally inconsistent verdict is defined as "a verdict in which the same element," e.g., sexual intercourse, "is found to exist and not to exist, as when a defendant is convicted of one offense and acquitted of another, even though the offenses arise from the same set of facts and an element of the second offense requires proof that the first offense has been committed.

Therefore, petitioner submits that when the criminal sentences imposed are not reasonably supported by the evidence there is "a substantial showing of the denial of a constitutional right," and this Court should grant petitioner a C. O. A. on Issue Four. Rule 22(b)(1), Federal Rule of Appellate Procedure, ***Hohn v. U.S.*** 236, 242-43 (1998); *Reid v. True*, 349 F. 3d 788, 795-96 (4th Cir., 2003) *cert* denied, 549 U.S. 1097 (2004)

## V.  RELIEF REQUESTED

1)    Petitioner respectfully requests a panel of the appellate court find substantial violations of petitioner's   federal or  constitutional  rights and    issue a Certificate of Appealability on issues one, two, three, and  four, 28 U.S.C. §

-23-

No. 15-7648 (PSC-ABW)

2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

2)    Petitioner-appellant requests this Court grant him permission to proceed *in forma pauperis* and appoint counsel to assist petitioner-appellant perfect this petition for appeal.

3)    Petitioner respectfully requests that a panel of the U. S. Court of Appeals for the Fourth Circuit find a substantial violations of a federal or constitutional right and issue a Certificate of Appealability on Issue One, the ineffective assistance of counsel issue. 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

4)    Petitioner respectfully requests that a panel of the U. S. Court of Appeals for the Fourth Circuit find a substantial violation of a federal or constitutional right and issue a Certificate of Appealability on Issue Two, the prosecutorial misconduct issue, 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

5)    Petitioner respectfully requests that a panel of this appellate court find a substantial violation of a federal or constitutional right and issue a Certificate of Appealability on Issue Three, the insufficient evidence claim. 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

6)    Petitioner respectfully requests a panel of the U. S. Court of Appeals for the Fourth Circuit find that there was a substantial violation of petitioner's constitutional right to due process of law and issue a Certificate of

HAROLD L. CYRUS
O.I.D. 3401438
MT. OLIVE CORRECTIONAL COMPLEX
ONE MOUNTAINSIDE WAY
MT. OLIVE, WEST VIRGINIA 25185

Ms. PATRICIA S. CONNOR, CLERK
U.S. COURT OF APPEALS, 4th CIRCUIT
U.S. COURTHOUSE ANNEX 5th FLOOR
1100 EAST MAIN STREET
RICHMOND, VIRGINIA 23219

CORRESPONDENCE FROM
AN INMATE AT MOUNT OLIVE
CORRECTIONAL COMPLEX